IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ROBERT C. BONNET and BOBBY BONNET LAND SERVICES,<br><br>Plaintiffs,<br><br>v.<br><br>HARVEST (US) HOLDINGS, INC. et al.,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br><br>Case No.  2:10-cv-217 CW<br><br>Judge Clark Waddoups |

Plaintiffs served non-party Ute Indian Tribe of the Uintah and Ouray Reservations ("the Ute Tribe") with a Subpoena Duces Tecum as part of its discovery in this case.  The Ute Tribe moved to quash the subpoena, asserting tribal sovereign immunity.  Magistrate Judge Brooke Wells issued a Ruling and Order on August 11, 2011 denying the Ute Tribe's motion to quash the subpoena. [Ruling and Order ("Ruling and Order"), Dkt No. 56 (Aug. 29, 2011)].  The Ute Tribe objected, Plaintiffs responded, and both parties submitted supplemental memoranda. Briefing on the objection was completed on February 15, 2012.  For the reasons stated below, the court now AFFIRMS IN PART and REVERSES IN PART the contested Ruling and Order.

## BACKGROUND

According to the complaint, Robert C. Bonnet is a petroleum landman who, through his sole proprietorship Bobby Bonnet Land Services, entered into a contract with the Ute Tribe to serve as an independent contractor and consultant.  Defendants Harvest (US) Holdings, Inc., Branta Exploration & Production, LLC, and Ute Energy LLC made various business proposals to the Ute Tribe, which Bonnet rejected because he did not believe they were in the best interests of

the Tribe.  Because of his opposition to these oil and gas proposals, the defendant companies and

various individuals, some of whom are also listed as defendants in this action, allegedly caused

Bonnet's contract with the Ute Tribe to be prematurely terminated.  Bonnet filed suit in this

court on March 10, 2010, alleging intentional interference with economic relations, libel,

slander, intentional infliction of emotional distress, and civil conspiracy.

During the time set aside by parties for discovery, Plaintiffs served a Subpoena Duces

Tecum on the Ute Tribe, who is not a party in the case.  The Subpoena made the following

document requests:

Request No. 1:  Any and all documents relating to any communication between or
among you and Robert Bonnet.

Request No. 2: Any and all documents relating to communication prepared by
Robert Bonnet during his contract employment with you.

Request No. 3: Any and all documents relating to communication between or
pertaining to Branta and Robert Bonnet.

Request No. 4: Any and all documents relating to communication between or
pertaining to Harvest and Robert Bonnet.

Request No. 5: Any and all documents relating to communication between or
pertaining to Bureau of Indian Affairs and Robert Bonnet

Request No. 6: Any and all documents regarding negotiations of Oil and Gas
Leases for Individual Allotee Owners.

Request No. 7: Any and all documents relating to the September 9, 2008 business
meeting at Falcon's Ledge.

Request No. 8: Any and all documents relating to transactions with Berry
Petroleum, Ute Energy, and the Ute Indian Tribe.

Request No. 9: Any and all communications received by members of the Ute
Indian Tribe pertaining to Robert Bonnet.

Request No. 10: Any and all documents, minutes, recordings video or otherwise, relating to meetings conducted by the Ute Indian Tribe Business Committee pertaining to Robert Bonnet, Harvest, Branta, and/or Ute Energy.

[Subpoena, Exhibit A to Non-Party Movant Ute Indian Tribe's Memorandum in Support of Motion to Quash Subpoena Duces Tecum ("Memorandum to Quash"), Dkt No. 34 (Mar. 23, 2011)].  The Ute Tribe objected to these requests, invoking tribal sovereign immunity and making several arguments under Federal Rule of Civil Procedure 45(c)(3). [Non-Party Movant Ute Indian Tribe's Motion to Quash Subpoena Duces Tecum ("Motion to Quash"), Dkt. No. 33 (Mar. 23, 2011)].  Plaintiffs responded that the subpoena was appropriate. [Memorandum in Opposition to Non-Party Movant Ute Indian Tribe's Motion to Quash Subpoena Duces Tecum ("Opposition to Quash"), Dkt. No 39 (Apr. 13, 2011)].  The Ute Tribe then filed a reply.[1]  [Non-Party Movant Ute Indian Tribe's Reply in Support of the Tribe's Motion to Quash Subpoena Duces Tecum ("Reply"), Dkt. No 43 (May 9, 2011)].

On April 14, 2011, the case was referred to Magistrate Judge Brooke Wells, under 28 U.S.C. § 636(b)(1)(A), to hear and determine all non-dispositive pretrial matters.  [Docket Text Order Referring Case, Dkt. No. 40 (Apr. 14, 2011)].  Judge Wells ruled in favor of the Plaintiffs

---

[1]  Following oral argument before Judge Wells held on June 8, 2011 on the motion to quash, the Ute Tribe also filed a document purporting to offer additional information on the issue with the court. [Non-Party Movant Ute Indian Tribe's Notice of Additional Information Regarding Its Motion to Quash Subpoena and Additional Legal Authority Releveant [sic] to the Additional Information, Dkt. No. 46 (June 9, 2011)].  Plaintiffs responded with a motion to strike the filing. [Motion to Strike Non-Party Movant Ute Indian Tribe's Notice of Additional Information Regarding Its Motion to Quash Subpoena and Additional Legal Authority Relevant to the Additional Information ("Motion to Strike"), Dkt. No. 48 (June 17, 2011)].  In the Ruling and Order, Judge Wells granted the Plaintiffs' Motion to Strike. [Ruling and Order at 13].  The Ute Tribe has not contested this decision. [*See* Non-Party Movant Ute Indian Tribe's Objection to Magistrate Judge's Ruling & Order and Request for a *De Novo* Determination of the Tribe's Sovereign Immunity Challenge ("Objection to Ruling") at 2, Dkt. No. 57 (Aug. 29, 2011)].  No part of the court's ruling today disturbs Judge Wells' ruling on Plaintiffs' Motion to Strike.

on the Motion to Quash, finding that the Rule 45 challenges were not persuasive and that the Ute Tribe's interests were "significantly outweighed" by Plaintiffs' need to access the information and "under such circumstances the doctrine of tribal sovereign immunity was not intended to extend to a non-party Tribe." [Ruling and Order at 10].  The Ute Tribe objected to this ruling, specifically on the grounds of sovereign immunity, and has asked the court to review the decision. [Objection to Ruling at 4].  As will be explained below, the court now partially overrules the Ruling and Order.

<u>**LEGAL STANDARDS**</u>

**I.     TRIBAL SOVEREIGN IMMUNITY AND RULE 45 DISCOVERY**

Sovereign immunity is an issue of subject matter jurisdiction.  *Ramey Contr. Co. v. Apache Tribe of Mescalero Reservation,* 673 F.2d 315, 318 (10th Cir. 1982).  Because it is jurisdictional, sovereign immunity may be raised at any stage of the proceedings.  *Id.*  Therefore, court must conduct a *de novo* review of the Ruling and Order.  *See Miner Electric, Inc. v. Muscogee (Creek) Nation*, 505 F.3d 1007, 1009 (10th Cir. 2007).

The court recognizes that the Ute Tribe is a federally recognized sovereign Indian tribe. [Ruling and Order at 5].  As a matter of law, a federally recognized tribe "is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity."  *Kiowa Tribe of Okla. v. Mfg. Techs.*, 523 U.S. 751, 754 (1998); *see also United States v. U.S. Fid. & Guar. Co.*, 309 U.S. 506, 512 (1940) ("Indian nations are exempt from suit without Congressional authorization.").  The question before the court is whether sovereign immunity also shields a tribe from legal process when it, as a non-party, is served with a subpoena requesting information and documents relevant to a civil suit.  The court holds that, although tribal

4

sovereignty should be considered when weighing discovery requests, sovereign immunity does not completely and automatically excuse a tribe from complying with a subpoena.

Sovereign immunity prevents suits which would interfere with another government, restrain or compel that government to act, or affect the sovereign's public treasury. *Dugan v. Rank*, 372 U.S. 609, 620 (1962). Therefore, tribal sovereign immunity is a "corollary to Indian sovereignty and self-governance." *Three Affiliated Tribes of Ft. Berthold Reservation v. Wold Eng'g*, 476 U.S. 877, 890 (1986). It is "necessary to promote the federal policies of tribal self-determination, economic development, and cultural autonomy." *Breakthrough Mgt. Group v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1182 (10th Cir. 2010).

## A.       Sovereign Immunity Is Not Unlimited

The federal government recognizes Indian tribes as "domestic dependent nations" which, though sovereign, are also "under the sovereignty and dominion of the United States." *Cherokee Nation v. Georgia*, 30 U.S. 1, 17 (1831). The Supreme Court has observed that "because of the peculiar 'quasi-sovereign' status of the Indian tribes, the Tribe's immunity is not congruent with that which the Federal Government, or the States, enjoy." *Three Affiliated Tribes of Fort Berthold Reservation*, 476 U.S. at 890.

The sovereign immunity of each state is protected by the Eleventh Amendment. Neither the Eleventh Amendment nor the general doctrine of sovereign immunity shields a non-party state from complying with a federal subpoena. *See In re Missouri Dep't of Natural Resources*, 105 F.3d 434, 436 (8th Cir. 1997) (discussing discovery requested from the Missouri Department of Natural Resources, a non-party, holding that "[g]overnmental units are subject to the same discovery rules as other persons and entities having contact with the federal courts") (citing

*United States v. Proctor & Gamble*, 356 U.S. 677, 681 (1958)); *see also University of Texas at Austin v. Vratil*, 96 F.3d 1337, 1340 (10th Cir. 1996) (stating that while sovereign immunity and the Eleventh Amendment shield state entities from discovery as a party under Federal Rule of Civil Procedure 11, they do not protect them from non-party discovery under Rule 45).[2]  Indeed, "[f]ederal subpoenas routinely issue to state and federal employees to produce official records or appear and testify in court and are fully enforceable despite any claim of immunity." *United States v. Juvenile Male I*, 431 F. Supp. 2d 1012,1016 (D.N.M. 2006).  The Ute Tribe does not advance any compelling arguments as to why quasi-sovereign tribes should be protected from discovery in circumstances when states, which are fully protected by the Eleventh Amendment, are not.

Furthermore, tribal sovereign immunity is a doctrine that has recently been subjected to considerable judicial criticism.  *See* Joshua Jay Kanassatega, *The Discovery Immunity Exception in Indian Country—Promoting American Indian Sovereignty by Fostering the Rule of Law* ("*The Discovery Immunity Exception*"), 31 Whittier L. Rev. 199, 239–244 (2009).  Indeed, the Supreme Court has recently stated "[t]here are reasons to doubt the wisdom of perpetuating the doctrine [of sovereign immunity.  Certain] considerations might suggest a need to abrogate tribal immunity [but] we defer to the role Congress may wish to exercise in this important judgment." *Kiowa Tribe of Okla*, 523 U.S. at 758.  Given the increasing hesitance of courts to apply tribal

---

[2]  Although the Ute Tribe has identified a case which holds that states are shielded from subpoenas directed at non-party discovery, *Estate of Gonzales v. Hickman*, 466 F. Supp. 2d 1226 (E.D. Cal. 2006), it has not directed the court to any such authority within the Tenth Circuit.  In contrast, Tenth Circuit case law maintains, albeit in dicta, that states are not shielded from Rule 45 discovery requests. *University of Texas at Austin*, 96 F.3d at 1340.

immunity, this court does not believe it is wise to expand the doctrine to protect tribes not only

from suit, but also from non-party discovery.

**B.      Caselaw**

        The Ute Tribe urges that this doctrine would not be an expansion of the law and that

controlling precedent has already held that Indian tribes are exempt from complying with Rule

45 discovery requests.  In making this argument, it cites *Breakthrough Management. Group v.*

*Chukchansi Gold Casino & Resort*, 629 F.3d 1173 (10th Cir. 2010) and *Equal Employment*

*Opportunity Commission v. Cherokee Nation*, 871 F.2d 937 (10th Cir. 1989).  Both of these

cases are inapposite.  *Breakthrough Management Group* discusses the extent to which tribal

immunity protects tribal entities such as tribal owned casinos from direct suit.  *Cherokee Nation*

holds that the ADEA does not apply to Indian tribes and that a tribe cannot, therefore, be sued

for a violation of its provisions.  While both of these cases affirm that tribal sovereign immunity

shields an Indian tribe from direct suit under certain circumstances, as a well-established

principle, neither discusses the role that tribal sovereign immunity might play when a tribe is a

non-party to a suit.  These cases, along with *Cash Advance & Preferred Cash Loans v. State*, 242

P.3d 1099 (Colo. 2010) and *Wyandotte Nation v. Sebelius*, 443 F.3d 1247 (10th Cir. 2006),

which the Ute Tribe also relies on, all prohibit discovery against tribes and their entities where

the tribe is being directly sued or investigated.  This is not the circumstance now before the

court.

        The Ute Tribe also cites *Puyallup Tribe, Inc. v. Department of Game of Washington*, 433

U.S. 165 (1977).  The state in *Puyallup Tribe* brought suit against the tribe and its members to

enforce fishing restrictions.  The Court dismissed the claims against the tribe on the ground of

sovereign immunity.  In allowing the state to police the fishing activities of individual tribal

members, the Court did observe that the lower courts did not have the authority to burden the

tribe with an ongoing obligation to provide the state with information on the status of tribe

members and their fishing activities.  This decision did not rest on the time-limited discovery

permitted by the Federal Rules of Civil Procedure, but instead discussed the government's ability

to impose ongoing reporting obligations upon an Indian reservation in shaping civil relief and

prospectively policing violations of state law.

In addition to these cases, the Ute Tribe also cites to *United States v. James*, 980 F.2d

1323 (9th Cir. 1992).  This case is more on point, although it is not controlling authority.  In

*James*, the Ninth Circuit held that the state could not enforce a subpoena against an Indian tribe

in the course of a criminal investigation against a tribal member.  Professor Joshua Jay

Kanassatega has described how *James*, as well as a few subsequent cases which have relied on it,

is misguided.  He explains that the court in *James* "simply got it wrong," stating:

> The discovery immunity exception, as currently applied in the federal courts, is
> problematic.  The court in James failed to apply the traditional balancing
> approach articulated in Bryan, which weighs an individual's interest against that
> of the public interest to determine whether to enforce civil process against third-
> parties
> . . . .  Application of the discovery immunity exception not only prevents a party
> from access to [relevant] information, but it creates a huge hole in [the Federal
> Rules of Civil Procedure and] can provide a patently unfair advantage to one of
> the parties.[3]

---

[3] Professor Kanasstega also describes how adherence to the *James* holding that tribal sovereign
immunity bars non-party discovery requested of a tribe may actually undermine tribal autonomy.
He states the rule "sends the wrong message to those who might want to engage in commercial
activities within Indian tribes and understand that the possibility of litigation is a fact of life and
information needed to support a claim or defense is possessed by parties and non-parties alike."
Joshua Jay Kanassatega, *The Discovery Immunity Exception* at 270.  Kanassatega explains this
lends "greater complexity, uncertainty, and expense" to litigation and may become an obstacle to
increased economic activity on Indian lands.  *Id.* at 271.  Finally, his article describes the recent
judicial and scholarly criticism of the tribal sovereign immunity doctrine and observes that by
applying immunity broadly, the core of the sovereignty doctrine may be further eroded.  *Id.* at
273–74.  The court finds this argument persuasive.

Joshua Jay Kanassatega, *The Discovery Immunity Exception* at 267–68.

The court concurs in this conclusion and adopts Professor Kanassatega's reasoning. Discovery requests should be governed by the classic *Bryan* balancing test, and not be completely barred by the doctrine of sovereign immunity.  *See United States v. Velarde*, 40 F. Supp. 2d 1314, 1316 (D.N.M. 1999) ("[T]he proper procedure is to balance the sovereign interests of the United States and the Tribe [as] courts often [do] where sovereign immunity is asserted in an effort to quash a subpoena.").  The important principles which have inspired and shaped the tribal sovereign immunity doctrine, including tribal self-determination, economic development, and cultural autonomy, should inform the balancing process.  Consideration of tribal autonomy, however, should not automatically and completely bar jurisdiction and the application of the balancing test, given the important role discovery plays in obtaining justice and the limited burden Rule 45 discovery may impose upon non-parties.

Despite the decision of the Ninth Circuit in *James*, many courts, including district courts within the Ninth Circuit, have found that Indian tribes are subject to a federal subpoena.  *See United States v. Snowden*, 879 F. Supp. 1054, 1057 (D. Or. 1995) ("[C]onstitutional rights of due process, fair trial, confrontation, and compulsory process outweigh the claim of [tribal sovereign] immunity.").  For instance, the Eighth Circuit has held that "[a]n Indian reservation provides no sanctuary from the reach of a federal subpoena to compel testimony before a grand jury on matters within the jurisdiction of the District Court."  *In re Long Visitor*, 523 F.2d 443, 447 (8th Cir. 1975).  A district court within the Tenth Circuit disagreed with *James* and held that tribal entities were subject to the enforcement of subpoenas in a criminal case, stating it believed "there is every likelihood" that the Ninth Circuit would reconsider its holding in *James* if given the opportunity.  *United States v. Juvenile Male 1*, 431 F. Supp. 2d 1012, 1018 (D.N.M. 2006),

*see also Velarde*, 40 F. Supp. 2d at 1315–16 ("I disagree with the *James* conclusion. . . .  I find

that the proper procedure is to balance the sovereign interests of the United States and the

Tribe.").

Although *Juvenile Male*, *Velarde*, *Snowden*, and *In re Long Visitor* were criminal cases, a

court has held in a civil case that tribal sovereign immunity does not bar enforcement of a federal

subpoena.  *Alltel Comm. v. DeJordy*, No. Civ. 10-MC-00024, 2011 WL 6737666 (D.S.D. Feb.

17, 2011).  In *Alltel*, the Oglala Sioux Tribe sought to quash a subpoena duces tecum issued in a

contract case to which it was not a party.  The Oglala Sioux Tribe asserted tribal sovereign

immunity.  The court, after carefully reviewing the cases discussed here, comparing tribal

sovereign immunity with state sovereign immunity, and referring to scholarly analysis, held:

> The court must conclude tribal sovereign immunity constitutes no shield for the
> Tribe, as a non-party, to justify noncompliance with a federal civil subpoena
> duces tecum.  The Tribe is neither a party to the underlying litigation . . . nor is
> the tribal treasury exposed to an adverse judgment. . . .  Granting the Tribe's
> motion to quash these subpoenas on the basis of tribal immunity would create [a
> discovery exception] that only would be available to a tribe, tribal agency, official
> or employee.  It would be strange indeed if a federal subpoena were operative
> against the federal government and its officers but not against a tribe.

*Id.* at *12 (internal quotations, citation, and alterations omitted).  The court agrees with Professor

Kanassatega's article, Judge Wells' Ruling and Order, and the *Alltel* decision that tribal

sovereign immunity does not excuse a non-party tribe from complying with a subpoena, but that

the traditional balancing test should instead be applied.

## II.     THE BRYAN BALANCING TEST

In *United States v. Bryan*, the Supreme Court explained that "the great power of

testimonial compulsion [is] necessary to the effective functioning of courts" and that "the public

. . . has a right to every man's evidence." 339 U.S. 232, 330 (1950).[4]  Because of this, "there is a general duty to give [evidence and any] exemption from testifying or producing records thus presupposes a very real interest to be protected."  *Id.*  An exemption from discovery must, therefore, be "grounded in a substantial" interest which "outweigh[s] the public interest in the search for truth."  *Id.*

The *Bryan* test has been incorporated into Rule 45 of the Federal Rules of Civil Procedure, which provides that a court "must quash or modify a subpoena that" is unreasonable, including any subpoena which "subjects a person to undue burden."  Fed. R. Civ. P. 45(c)(3)(A)(iv).  In applying this test to discovery requested of a non-party Indian tribe, the court recognizes that tribes, as quasi-sovereign nations, have a substantial interest in maintaining autonomy.  Therefore, non-party discovery that would significantly impact the tribal treasury, require the production of private documents related to tribal governance, or interfere with the administration of tribal services may, in those circumstances, not be permissible.  *See Alltel*, 2011 WL 6737666, at *12 (observing a court "should consider the interests of a claim of [tribal sovereign] immunity against the search for truth contemplated by the Federal Rules of Civil Procedure").

## III.    REQUESTED DISCOVERY

The contested subpoena makes ten discovery requests of the Ute Tribe.  Plaintiffs have agreed to give the Tribe reasonable time to comply with the requests, and to pay all appropriate

---

[4]  The important role of information in an adversarial justice system has been well recognized and valued in the United States.  "The very integrity of the judicial system and public confidence in the system depend on full disclosure of all the facts, within the framework of the rules of evidence.  To ensure that justice is done, it is imperative to the function of courts that compulsory process be available for the production of evidence needed either by the prosecution or by the defense."  *United States v. Nixon*, 418 U.S. 683, 708 (1974).

costs, including compensation for the time needed to compile the requested documents. [Ruling and Order at 11]. The court recognizes, however, that the requests will consequentially divert attention of some tribal employees away from tribal affairs while compiling the requested discovery. Therefore, very broad requests, which are likely to require significant tribal attention and are unlikely to uncover any more relevant evidence than an appropriately narrower request, should not be permitted.

The first discovery request asks for "all documents relating to any communication between you [the Ute Tribe] and Robert Bonnet." Subpoena, Exhibit A to Memorandum to Quash. Because Plaintiff's employment by the Ute Tribe is central to the claims made in this case, such discovery is appropriate.

The second request seeks "documents relating to communication prepared by Robert Bonnet during his employment with you [the Ute Tribe]." *Id.* Like the first request, this is aimed at obtaining information relevant to Bonnet's employment and job performance, which is relevant to considerations in this suit.

The third request targets "documents relating to communication between or pertaining to Branta and Robert Bonnet." *Id.* This is potentially a broad request if it is taken to ask for all documents pertaining to Branta in any way. The court, however, interprets the language to request only those documents which pertain to *both* Branta *and* Robert Bonnet. When read in this way, the discovery request is appropriately targeted to uncover relevant information and does not unduly burden the Tribe.

The fourth request asks for "all documents relating to communication between or pertaining to Harvest and Robert Bonnet." *Id.* Again, insofar as this is interpreted as a request

for only documents which reference both Harvest and Robert Bonnet, it is an appropriate request.

The fifth request targets "documents relating to communication between or pertaining to Bureau of Indian Affairs and Robert Bonnet." *Id.*  As an Indian tribe, the Ute Tribe is likely to have a vast number of documents pertaining to the Bureau of Indian Affairs.  However, interpreting the language to only request documents which reference both Robert Bonnet and the Bureau of Indian Affairs, the requested information is subject to discovery.

The sixth request seeks "all documents regarding negotiations of Oil and Gas Leases for Individual Allottee Owners." *Id.*  This request is potentially very broad, and should be limited to the relevant time period.  The court, therefore, orders the Ute Tribe to produce any and all documents regarding negotiations of Oil and Gas Leases for Individual Allottee Owners *during 2008 and 2009*.

The seventh discovery request asks for "documents relating to the September 9, 2008 business meeting at Falcon's Ledge." *Id.*  This meeting is relevant to the dispute and the discovery request is therefore appropriate.

The eighth request seeks "all documents relating to transactions with Berry Petroleum, Ute Energy, and the Ute Indian Tribe." *Id.*  If this request is read to seek all documents the Ute Tribe has relating to transactions with the Ute Indian Tribe, it is very broad and threatens tribal interests in governance and autonomy.  As long as the request only requires production of documents relating to transactions which include all three parties, however, it targets acceptable discovery.

The ninth request asks for "all communications received by members of the Ute Indian Tribe pertaining to Robert Bonnet." *Id.*  Read literally, this request would require a review of

13

documents held by every member of the Ute Tribe for responsive materials "pertaining," in any

way, to Robert Bonnet. Such a request is overly broad and would impose the undue burden

prohibited by Rule 45. Even interpreting the request more narrowly to require only those

documents which the Ute Tribe has in its possession, it would still require a review of essentially

all files of any Tribe member in the Tribe's possession. The required response to the request,

even as so limited, would impose a substantial burden on the Tribe. In balancing the need for the

information against this burden, the court finds that the Plaintiffs have failed to demonstrate a

substantial need sufficient to justify this burden. The request seems primarily aimed at obtaining

information to support Plaintiffs' claims of slander and libel. Those causes of action require

Plaintiffs to plead the alleged slanderous and libelous statements with particularity. *Williams v.

State Farm Ins. Co.*, 656 P.2d 966, 971 (Utah 1982). If Plaintiffs lack sufficient information to

meet this pleading requirement, they are not entitled to conduct a dragnet search to now obtain it.

*Mast v. Overson*, 971 P.2d 928, 933 n.6 (Utah Ct. App. 1998) (observing plaintiffs "must refrain

from filing suit precipitously . . . hoping to exploit discovery tools to uncover some previously

unknown negative comment"). This request is overly broad and unjustified. It fails to meet the

requirement for proportionality imposed by the discovery rules. *See* Fed. R. Civ. P. 26(b)(2)(C).

The objection to the ninth request is therefore sustained.

    The tenth discovery request targets "all documents, minutes, recordings video or

otherwise, relating to meetings conducted by the Ute Indian Tribe Business Committee

pertaining to Robert Bonnet, Harvest, Branta, and or Ute Energy." *Id.* This is a very broad

request, which includes many parties and is not limited in scope by time. To the extent

production of these documents is not already required by another discovery request, it appears

unlikely to the court that any such documents will be relevant to Plaintiffs' case. Furthermore,

14

the request is directly targeted to uncover discussions and decisions intrinsic to the tribal governance process. Recognizing the importance of tribal autonomy and self-governance, as well as the limited relevance of this overly broad request, the court quashes this portion of the subpoena.

Although the court finds that the scope of the subpoena was overly broad, because very few cases have addressed civil discovery of documents held by a non-party tribe, the court does not believe that Plaintiffs unreasonably imposed "undue burden or expense" on the Ute Tribe. Fed. R. Civ. P. 45(c). Therefore, the court will not impose sanctions or attorneys fees under Rule 45(c).

## CONCLUSION

The court does not intend to abrogate the well-established doctrine of tribal sovereign immunity and recognizes that it may not exercise jurisdiction over an Indian tribe party, absent a waiver of that immunity. Nevertheless, for the reasons explained above, in the case of the requested discovery of a non-party Indian tribe, the court finds that the doctrine of tribal sovereign immunity does not apply. There is no indication that Congress intended to exempt quasi-sovereigns, such as the Ute Tribe, from application of Rule 45. To do so would substantially impede the public's right to the truth. At the same time, however, requested discovery cannot unreasonably burden a non-party, and in the case of an Indian tribe, the discovery requests must respect the tribal interests in maintaining independence and autonomy.

Therefore, in accord with the discussion above, the court REVERSES IN PART the Ruling and Order,[5] holding that the Ute Tribe need not fully comply with the sixth discovery request, and need not comply at all with the ninth and tenth discovery requests, as explained

_____

[5] Dkt. No. 56 (Aug. 29, 2011).

above.  The court also, however, AFFIRMS the Ruling and Order IN PART, and outside of the

above exceptions, the Ute Tribe must comply with Plaintiffs' subpoena, as interpreted in this

order.

DATED this 23rd day of March, 2012.

BY THE COURT:

Clark Waddoups
United States District Judge

16